IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CHARLES AARON BROOKS,

        **Plaintiff,**

v.                                        Civil Action No. 5:06cv64
                                           (Judge Stamp)

AL HAYNES, LT. GRUNDY, D. RAUDBAUGH,
MR. BENTON, MR. BETLER, LT. GONZALEZ, MR.
MILTON, J. L. SHAW, DON GIL, V. PURI, MR. BOIL,
DR. TENANT, DR. HAMMOND, DR. WARN, M. DOLE,
HUMPHREY, D. MURPHY, LT. AMMONS, MR. BOYLES,
ROBERT STOCK, J. ROBINSON, AND JOHN DOE 1 AND 2;

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On June 1, 2006, the *pro se* plaintiff initiated this case by filing a civil rights complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). In the complaint, plaintiff asserts that he is in imminent danger at Hazelton Prison and seeks temporary injunctive relief against the defendants. Because of the serious nature of the allegations, the Court directed the defendants to file an expedited response. The defendants did so on July 12, 2006. This case is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01, et seq., and 28 U.S.C. §§ 1915(e) and 1915A.

**I. The Complaint**

In the complaint, plaintiff asserts that he filed a civil action against Lompoc prison officials in the United States District Court for the Central District of California. Plaintiff asserts that after the officials at the Hazelton prison found out about his lawsuit against other Bureau of Prison ("BOP") employees, he was beat, neglected, sexually assaulted, and refused medical

treatment. In addition, plaintiff asserts that the Hazelton officials used excessive force on him, denied him stamps, denied him telephone calls and made terroristic threats against him.

In support of his claims, plaintiff asserts that defendant Raudbaugh told him that if he did not remove all charges against the Lompoc officials, plaintiff would be subject to all kinds of punishment. Moreover, Raudbaugh, Haynes, Betler, Milton and Gil retaliated against plaintiff by placing him on two-hour watch without cause.

On or about August 24, 2005, plaintiff asserts that he injured his back, neck, and head on an oily substance on his cell floor. Plaintiff asserts that at the time, there was no doctor present at the institution and he had seizures and convulsions due to his head injuries, but that he was denied pain medication, x-rays, a back brace and a neck brace. After plaintiff was injured, prison officials "violently" moved him. Plaintiff asserts that defendant Haynes decision to not hire a physician violated the BOP's rules and policies and plaintiffs' Fifth, Eighth, and Fourteenth Amendment rights.

On or about that same day, defendant Raudbaugh and defendant Haynes made terroristic threats against plaintiff by stating that they would kill plaintiff if he filed a civil action. Those defendants also denied plaintiff grievance forms and refused to process his grievance forms in retaliation.

Also out of revenge and retaliation, plaintiff asserts that defendant Puri made sure plaintiff received a top bunk even though she knew plaintiff had chronic back problems and that he would suffer pain from his injuries.

On or about February 24, 2006, plaintiff was on a hunger strike. Plaintiff alleges that defendants Murphy, Dole, and Benton entered his cell with plexiglass shields and beat, stomped and choked him. Plaintiff asserts that these defendants were directed to enter his cell in this

fashion and without a video camera by defendants Haynes, Betler, and Raudbaugh.  Plaintiff asserts that during this beating, defendant Murphy laughed at him and made terroristic threats in an effort to get plaintiff off his hunger strike.  Plaintiff asserts that the medical staff at Hazelton prison was told not to do a medical assessment of him thereby denying plaintiff medical treatment.  Plaintiff asserts that all of the defendants knew of the beating, and use of excessive force, and conspired together to cover up the crime.

Plaintiff asserts that defendant Stock is the only named defendant not employed at Hazelton Prison.  Defendant Stock is employed at the Internal Affairs Division of the BOP at Annapolis Junction, Maryland.  Plaintiff asserts that defendant Stock knew of the crimes committed against plaintiff, but failed to help him.  Instead, defendant Stock attempted to bribe the plaintiff into redacting his statements against defendant Raudbaugh.

On or about March 13, 2006, plaintiff asserts that defendant Shaw entered his cell and placed his hands on plaintiffs' anus and inserted his fingers in plaintiffs' buttocks while the plaintiff slept.  Plaintiff asserts that defendant Shaw stated that he would have defendants Betler and Raudbaugh send plaintiff to Marion prison if he told anyone what had happened.  Again, plaintiff alleges that defendant Stock knew of this incident, but did nothing.

Plaintiff also asserts that Dr. Hammond, Dr. Warn and Dr. Tenant, conspired in the wrongful death of another inmate.  Plaintiff asserts that he has attempted to send various letters/complaints to the Director of the BOP, Senators, Internal Affairs, and the BOP's Regional Office, but defendant Haynes will not let his mail out.  Plaintiff also asserts that defendant Haynes will not grant him access to administrative grievance forms and/or refuses to process them.  In addition, plaintiff asserts that he was given disciplinary segregation based on false charges by defendant Shaw.

On May 3, 2006, plaintiff asserts that he was called to the Lieutenant's Office where defendants Grundy and Gonzalez told plaintiff to redact his complaints against defendants Raudbaugh, Murphy, Shaw, Haynes, and the Lompoc officials. When plaintiff refused, defendants Grundy and Gonzalez beat plaintiff with their fists until he fell to the ground where they then proceeded to stomp plaintiff with their shoes, and choke him. At that point, more staff came into the room and plaintiff's right arm and left heel were fractured. Plaintiff also asserts that he was kicked in the groin for approximately 20 minutes. Plaintiffs' hands and feet were then cuffed and he was "hoisted" to disciplinary segregation. Plaintiff asserts that putting him in segregation was a violation of his Fourth, Fifth, and Eighth Amendment rights because he was never written up, never received a copy of any charges, and never had a disciplinary hearing. Moreover, plaintiff asserts that medical staff never treated him for his pain and suffering.

For all these reasons, plaintiff seeks a temporary protective order against the defendants.

## II. The Defendants' Response

In their response, the defendants assert that plaintiff has not exhausted his administrative remedies, that the events alleged in the complaint did not occur, that the plaintiff is a continuous disciplinary problem and purposely manipulates the system, and that there is no cause for the Court to grant a temporary protective order.

## III. Standard of Review

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks

monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed.R.Civ.P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless,"[1] or when the claims rely on factual allegations which are "clearly baseless." Denton v. Hernandez, 504 U.S. 25, 32 (1992).

**IV. Analysis**

A. Defendants Haynes, Grundy, Raudbaugh, Benton, Betler, Gonzalez, Milton, Shaw, Gil, Puri, Murphy and Stock

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"[2] and is required even when the relief sought is not available. Booth at 741. Because

---

[1] Id. at 327.

[2] Porter at 524.

exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter at 524 (citing Booth at 741) (emphasis added). In addition, the Supreme Court has stated that "we will not read futility or other exceptions into statutory exhaustion requirements . . ." See Booth at 741, n. 6.

The Bureau of Prisons ["BOP"] makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at USP-Hazelton, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In his complaint, plaintiff fails to provide any proof of exhaustion and in fact admits that he has not completed the administrative remedy process with regard to the claims raised in the complaint. In addition, attached to the defendants' response to the complaint is the Declaration of Alecia D. Sankey, Paralegal Specialist ("Sankey Declaration"). See Dckt 42 at Exhibit 1. In her declaration, Ms. Sankey states that she is the Paralegal Specialist and the Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the BOP. Sankey Declaration at 1. As such, she is familiar with the BOP's administrative remedy program and the processing of inmate complaints. Id. In her position, Ms. Sankey has access to the official records maintained by the BOP, including the records for inmates incarcerated at the Hazelton Penitentiary. Id. at 1-

2.

Additionally, Ms. Sankey states that she has access to the plaintiff's administrative remedy records and that she has reviewed those records. Sankey Declaration at 2. Ms. Sankey certifies that plaintiff has filed numerous administrative grievances during his incarceration. Id. at 2-3. However, as pertains to this case, plaintiff has only filed two administrative remedies. Id. at 3. The first remedy was filed on September 8, 2005, and claimed that plaintiff was denied medical treatment. Id. However, plaintiff did not appeal the decision of the Warden to the Regional Office or the Central Office. Id. Plaintiffs' second remedy was filed on May 2, 2006, and claimed that staff beat him with a shield. Id. Plaintiff filed an appeal of the Warden's decision on June 8, 2006, and that appeal was pending at the time the declaration was filed. Id. Thus, Ms. Sankey declares that although plaintiff has initiated at least two remedies with regard to the claims raised in this case, plaintiff has not fully exhausted any of those claims. Id.

Upon further review of the printout provided by Ms. Sankey, the Court has concluded that plaintiff also filed remedies with regard to an alleged sexual assault at USP Hazelton and with regard to plaintiffs' placement on two-hour watch. See Dckt. 42, Ex. 1C at 6. As to his claims of sexual assault, it does not appear as if plaintiff pursued his remedies past the regional level. Id. at 6-7. As to his complaint about being on two-hour watch, it does not appear as if plaintiff pursued his remedies past the institutional level. Id. Needless to say, plaintiff is clearly not being denied access to the administrative remedy program.[3]

Because the plaintiff has failed to exhaust any of his administrative remedies with regard to the claims against defendants Haynes, Grundy, Raudbaugh, Benton, Betler, Gonzalez, Milton,

---

[3] Since his incarceration at USP-Hazelton, plaintiff has filed at least two other complaints on other matters. Dckt. 42, Ex 1C at 6-7.

Shaw, Gil, Puri, Murphy, and Stock, the complaint should be dismissed without prejudice as to those defendants. See Woodford v. Ngo, 126 S.Ct. 2378, 2382 (2006) ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").

B.  Defendants Boil, Humphrey, Ammons, Boyles, Robinson, and John Does 1 and 2

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends . . . (2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added)  "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Migdal v. Rowe Price-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001) (citation and internal quotations omitted).  This is particularly true in a Bivens action where "liability is personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001).

In the instant case, plaintiff makes no specific allegations against defendants Boil, Humphrey, Ammons, Boyles, Robinson, and John Does 1 and 2.  Thus, the plaintiff fails to state a claim for which relief can be granted against those defendants and they should be dismissed from this case.  See Weller v. Dept. of Social Servs., 901 F.2d 387 (4th Cir. 1990) (dismissal proper where there were no allegations against defendants).

C.  Defendants Tenant, Hammond and Warn

Plaintiff's only claim against defendants Tenant, Hammond, and Warn, is that they were responsible for the death of *another* inmate.  Plaintiff makes no allegation that those defendants

8

violated *his* constitutional rights in any way. Accordingly, because plaintiff has failed to establish that defendants Tenant, Hammond, and Warn were involved in a violation of his constitutional rights, those defendants should be dismissed without prejudice from this case. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (in a Bivens case, the plaintiff must specify the acts taken by each defendant which violate his constitutional rights); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988) (same); see also Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown); Trulock v. Freeh, supra.

D. Plaintiff's Request for Injunctive Relief

The standard for granting injunctive relief in this Court is the balancing-of-hardship analysis set forth in Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). In making this analysis, the Court must consider the following four factors:

(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction

is denied,

(2) the likelihood of harm to the defendant if the requested relief is granted,

(3) the likelihood that the plaintiff will succeed on the merits, and

(4) the public interest.

Direx Israel, Ltd v. Breakthrough Medical Corp., 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). The "[p]laintiff bears the burden of establishing that each of these factors supports granting the injunction." Id. (citation omitted).

A court will not grant a preliminary injunction unless the plaintiff first makes a "clear showing" that he will suffer irreparable injury without it. Id. The required harm "must be neither remote nor speculative, but actual and imminent." Id. (citations and internal quotation

9

omitted). If such harm is demonstrated, the court must balance the likelihood of harm to the plaintiff if an injunction is not granted and the likelihood of harm to the defendant if it is granted. Id. (citation omitted). If the balance of those two factors "'tips decidedly' in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Rum Creek Coal Sales, Inc. v. Caperton, 926 F.2d 353, 359 (4th Cir. 1991) (citations omitted). However, "[a]s the balance tips away from the plaintiff, a stronger showing on the merits is required." Id. (citation omitted).

In his case, plaintiff seeks a preliminary injunction directing the defendants to stop retaliating against him because of a suit he filed in California against officials at the Lompoc facility. However, plaintiff fails to establish that he is in actual and imminent danger of being harmed if an injunction does not issue. In support of his request for injunctive relief, plaintiff alleges that he is being denied medical treatment, yet his medical records show that he has been seen numerous times by medical staff. Plaintiff also asserts that his mail is being tampered with and that he is being denied stamps, yet plaintiff has been able to send numerous documents to this Court. Plaintiff asserts that staff has ignored his complaints of harassment, sexual abuse, and assault, yet those same claims either have been, or are currently under investigation by the BOP. It is clear from plaintiffs' medical records and past behavior that he purposely tries to manipulate and harass Bureau staff and that this lawsuit is simply another avenue by which he can accomplish that goal.[4]

---

[4] I note that plaintiff's claims are suspect for several reasons. Plaintiff has made nearly identical allegations against officials at other institutions. Response (dckt. 28) at 9. Moreover, plaintiff continually threatens staff, feigns mental illness, and pretends to be suicidal to get his way. Id. at 6. Plaintiff has a lengthy history of discipline problems and requires extra supervision. Id. Plaintiff is

Thus, the undersigned finds that plaintiff's claims of harm are speculative, and that any harm to the plaintiff in denying his request for injunctive relief is outweighed by the harm to the safety and security of the institution if such relief was granted. Moreover, plaintiffs' claims are not exhausted and he has no chance of success on the merits. However, even if his claims were exhausted, plaintiffs' claims are not credible and/or are refuted by the record. Thus, the public interest would be best served by denying plaintiffs' request for injunctive relief.

## V.  Recommendation

For the foregoing reasons, the undersigned recommends that the plaintiff's complaint be **DISMISSED without prejudice** for the failure to exhaust administrative remedies and his request for a Protective Order be **DENIED**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, and party may file written objections with the Clerk of Court. The written objections shall identify those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. See 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

IT IS SO ORDERED.

---

belligerent and uncooperative causing staff to take extra precautions for their safety when approaching him. Id. at 7. Plaintiff admittedly tries to manipulate staff. Id. at 9. And, according to the defendants, an exorbitant amount of time, energy, and resources are expended in dealing with the plaintiff. Id.

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff and counsel of record.

DATED: August 16, 2006.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE